UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 96-6923-CIV-ZLOCH

ROBERT PURCELL,

    Plaintiff,

vs.

MWI CORPORATION, et al.,

    Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
REMOVAL AND MEMORANDUM OF LAW IS SUPPORT OF REMAND**

COMES NOW, the Plaintiff, by and through his undersigned counsel and pursuant to this Court's Order of August 30, 1996, hereby submits this Memorandum of Law in response to the Defendants' Petition for Removal, and in support of Plaintiff's Motion for Remand.

**I.   BACKGROUND**

On July 23, 1996, the Plaintiff, Robert Purcell, commenced the above styled action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, seeking relief for: Breach of Written Contract; Breach of Oral Contract; Quantum Meruit; Conversion; Quantum Meruit; Fraud; Constructive Trust; Intentional Interference with a Contract; and, Declaratory Judgment. On August 12, 1996, the Defendants filed a Notice of Removal alleging that the claims contained within the counts for breach of written contract and breach of oral contract constitute causes of action over which this Court has original jurisdiction pursuant to 28 U.S.C § 1331 and 29 U.S.C. § 1132(e)(1).

Subsequently, this Court directed the parties to file memoranda addressing whether the



Employment Agreement ("Agreement") attached to the Plaintiff's Complaint and the alleged oral contract constitute employee welfare benefit plans as governed by ERISA.

## II. FACTUAL ALLEGATIONS

The breach of contract claims allege that, among other things, the Agreement provided that the Plaintiff was to work for Defendants MWI and MWT selling water pumping equipment and products manufactured by MWI and others, and was to be compensated a base salary, commissions, and additional compensation contained within the Agreement. The Agreement included approximately fourteen (14) different compensation terms[1]. The Plaintiff's complaint alleges that the Defendants breached the Agreement for failure to provide to the Plaintiff those items of compensation that the Defendants had agreed to within the Agreement and oral contract. The Defendants allege that the Agreement is a plan governed by ERISA because two out the fourteen items contained within the Agreement allegedly arise in relation to an ERISA Plan.

## III. ARGUMENT

The Agreement and oral contract at issue are not ERISA plans. Furthermore, the Plaintiff's claims do not relate to an ERISA plan. Accordingly, this Court should remand the case to the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida.

**ERISA DISCUSSION**

### A. THE EMPLOYMENT AGREEMENT AND ORAL CONTRACT ARE NOT PLANS GOVERNED BY 29 U.S.C. § 1002.

Whether an ERISA plan exists is a question to be determined by this Court. Thomas v. Burlington Industries, Inc., 763 F. Supp. 1570, 1573 (S.D. Fla. 1991). 29 U.S.C. § 1002 (1)

---

[1] The terms included: a base weekly salary; bi-annual bonuses; bi-annual reviews; a housing allowance; a year end bonus; profit sharing and pension participation; a 5th year bonus; access to an airplane; a $30,000 loan; purchase of Mr. Purcell's home if necessary to effectuate a move; execution of a non-compete agreement; payment for moving expenses; and, one international trip per year with wife to be approved.

2

provides as follows:

> (1) The terms, "employee welfare benefit plan" and "welfare plan mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or both, to the extent that such plan, fund, or program was established or is maintained for the purpose of provide for the participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical surgical, or hospital care or benefits in the event of sickness, accident, disability, death or unemployment or vacation benefits . . . 2(A) Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer, or by an employee organization or both, <u>to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program (I) **provides retirement income** to employees, or (II) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond</u>, regardless of the method of calculated contributions made to the plan, the method of calculating the benefits under the plan, or the method of distributing the benefits from the plan. (Emphasis added).

Accordingly, by definition, an employee welfare benefit plan requires: (1) a plan, fund, or program; (2) established or maintained; (3) by an employer or employee organization, or both; (4) for the purpose of providing . . . vacation benefits; (5) to participants or their beneficiaries. <u>Thomas</u>, 763 F. Supp. 1570. 1573 (S.D. Fla. 1991). Prerequisites (3), (4), and (5) are either self-explanatory or defined by statute. <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1371 (11th Cir. 1982). Not so well defined are "plan, fund or program" and "established or maintained." <u>Id</u>. at 1372. At a minimum, "plan, fund or program" implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits. <u>Id</u>. In discussing whether a plan is "established or maintained," the court in <u>Donovan</u> stated that a decision to extend benefits does not constitute the establishment of a plan or program. <u>Id</u>. at 1373. Thus, in order to determine if a plan, fund or program is "established or maintained," a court must determine whether, from the surrounding circumstances a reasonable person could ascertain the intended benefits, the intended beneficiaries, a source of financing, and the

3

procedures for obtaining benefits. Id. at 1373. In addition, the Eleventh Circuit, when faced with deciding whether an employment contract is a plan covered by ERISA, focuses on whether the contract is designed primarily for the purpose of providing retirement income versus whether the employment agreement contemplates the payment of post retirement income only incidental to a contract for current employment. Williams v. Wright, 927 F.2d 1540, 1547 (11th Cir. 1991).

**ALLEGED BENEFITS**

The Defendants' claim that under the definition of "employee welfare benefit plan" the Agreement in question is clearly covered by ERISA because it mentions that: "one international trip per year for the Plaintiff and his wife will be approved by the Defendants;" and mentions profit sharing and pension participation at 15% and 7% respectively per standard company plan.

As previously noted, an employee welfare benefit plan contains five elements, which at a minimum implies, the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits. Donovan v. Dillingham, 688 F.2d 1367, 1372 (11th Cir. 1982).

**DONOVAN ANALYSIS**

A.   EXISTENCE OF INTENDED BENEFITS

The Defendants claim that the Agreement in question is covered by ERISA fails the first step in the Donovan analysis - ascertaining the benefits due under the "plan." A party need not show the exact dollar amount they would expect to receive in benefits. However, when applying Donovan, courts have held that there must be some evidence from which the court can ascertain the benefits due under a plan. Diak v. Dwyer, Costello & Knox, P.C., 33 F.3d 809, 812 (7th Cir. 1994). With respect to both the vacation and pension plan and profit sharing, the Agreement does not disclose a formula for the distribution of benefits. An ad hoc arrangement for the

4

distribution of benefits does not satisfy the Donovan criteria, and does not constitute a "plan" within the meaning of ERISA. Id. at 813. The Agreement does not expressly state a method to be used in identifying alleged benefits.

B.    SOURCE OF FINANCING

The Agreement attached to the complaint also fails to reveal an ascertainable source of financing for the international trip and pension and profit sharing terms. Although Williams, supra, recognized that payment of benefits out of general funds satisfies the source of financing, there is no indication that anything was ever even paid out of general funds. In addition, the letter agreement in Williams made it very clear that the corporation would fund and pay for the benefits in question[2]. The same cannot be said of the Agreement in the present case.

With regard to vacation benefits, in Massachusetts v. Morash, 490 U.S. 107, 109 S. Ct. 1668, 104 L.Ed.2d 98 (1989), the Supreme Court held that a policy to pay employees for unused vacation time did not constitute an employee welfare benefit plan. The Court reasoned that in enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay benefits from accumulated funds. Id. at 1673. To that end, Congress established extensive requirements to insure against the possibility that an employee's expectation of benefits would be defeated as a result of mismanagement of the fund. Id. Because ordinary vacation payments are typically fixed, due at known times, and do not depend on contingencies outside the employees' control, they present none of the risks that ERISA was intended to address. Id.

The reasoning contained in Massachusetts, supra, is applicable here. The trip contained

---

[2] The letter in Williams stated "[t]he company will issue you a check in the amount of $500.00 each month, on the first of the month."

in the Agreement is not governed by ERISA because it does not implicate any concerns over mismanagement as there are no funds accumulated for the benefits - the trip is to be approved. The risk that the Plaintiff bears in losing his international trip is the same as his employment risk. The employment may be terminated and the employee will cease to receive other wages and compensation, including "one international trip per year for the Plaintiff and his wife to be approved by the Defendants." See Czechowski v. Tandy Corp., 731 F. Supp. 406 (N.D. Cal. 1990); UAW Local 33 v. R.E. Dietz Co., 996 F.2d 592, 597 (2nd Cir. 1993). Furthermore, vacation benefits paid from an employer's general assets do not constitute an employee benefit plan under ERISA. Under 29 C.F.R. § 2510.3-1 (b)(3)(i), the term "employee welfare benefit plan" does not include payment of compensation out of an employer's general assets to an employee who is on vacation. R.E. Dietz Co., 996 F.2d at 597 (2nd Cir. 1993). As a result, the purported vacation benefits do not convert the Agreement into a plan under ERISA.

Defendants argue that a profit sharing trust program is identified as the source for payment in regard to equity sharing. However, upon close examination, paragraph 5 of the Agreement merely reads "[p]rofit sharing and pension plan participation per company standard plan of approx. 15% profit sharing and 7% pension (over $15,200 base)." The Defendants point to paragraph 9[3] of the Agreement which refers to a loan. The loan is part and parcel of the Plaintiff's overall compensation, granted as an incentive to immediately relocate and join the company. Moreover, having a trust program does not ipso facto mean that a source of financing exists. For example, multiple employer trusts are simply vehicles which allow employers of small numbers of employees to secure group health insurance coverage for employees at more

---

[3] Paragraph 9 states: A $30,000 loan for housing to be provided on equity sharing basis with no payments for 8 years at which time the loan & equity accumulation would role into the profit sharing trust program.

6

favorable rates. <u>Donovan</u>, 688 F.2d at 1370. Similarly, the trust program in question could conceivably accomplish similar management services for the profit sharing program. There is no indication otherwise. Furthermore, this would still leave the pension plan without an ascertainable source of financing. The Agreement simply does not refer to an <u>ascertainable</u> source of financing for the international trip, profit sharing and pension.

C.   PROCEDURES FOR RECEIVING BENEFITS

In order for an ERISA "plan, fund, or program" to be established under the <u>Donovan</u> standards, a reasonable person must be able to ascertain the procedures for obtaining benefits. <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1373 (11th Cir. 1982). In <u>Williams v. Wright</u>, 927 F.2d 1534 (11th Cir. 1991), relied on by the Defendants, the letter in question expressly provided that the company "will issue you a check . . . each month . . . until your death or when you have no use for [the benefits]," and provided for payment of all country club dues and meal tickets when the receipts are executed. <u>Id</u>. at 1544-45. The letter also provided that in the event the arrangement did not "fill needs as anticipated," revisions would be considered. <u>Id</u>. at 1545. Based on these factors, the court concluded that the letter at issue in <u>Williams</u> provided sufficiently ascertainable procedures for obtaining benefits.

Again, unlike <u>Williams</u>, the Agreement and alleged Oral Contract in this case contains no provisions, terms, nor any other indicia whatsoever that would allow a reasonable person to ascertain the procedures for obtaining alleged benefits. The Agreement does not indicate how to obtain approval for a trip, nor state how the Plaintiff would obtain the alleged pension/profit benefits. For example, there is no provision in the Agreement which states the company will pay for all airfare, hotel, and meal tickets incurred on the international trip when receipts are presented.

### D.  THE CLASS OF BENEFICIARIES

Lastly, in order for the 'plan' to be "maintained or established," one must also be able to ascertain the class of beneficiaries. Although the court in <u>Williams</u> concluded that a plan covering only a single employee, <u>where all other requirements are met</u> is covered by ERISA, this conclusion was qualified. The opinion letters relied on by the Defendants and cited in <u>Williams</u> stated that a <u>plan</u> which <u>otherwise qualifies</u> for ERISA coverage will not be excluded because it only covers a single employee. In this case, as argued herein, all of the other requirements under <u>Donovan</u> have not been established. Therefore, the Agreement does not "otherwise qualify" for ERISA coverage. When it is considered that the pension and profit sharing benefits are not well defined and unclear, that the procedures for collecting and receiving the benefits are not ascertainable from the Agreement, and there is no source of financing for any of the alleged benefits, the fact that the Agreement applies only to the Plaintiff is certainly a significant factor in taking the Agreement outside the scope of ERISA.

In <u>Diak v. Dwyer, Costello & Knox, P.C.</u>, 33 F.3d 809 (7th Cir. 1994), the <u>Donovan</u> standards were applied to hold that no ERISA plan had been established. In <u>Diak</u>, a plan was not established even though payments would be made out of the employer's general funds because: the procedures for obtaining benefits were not clear; it was difficult to ascertain the benefits under the plan as the method used to calculate those benefits was not clear; and, the intended beneficiary could not be ascertained. <u>Id</u>. at 812-13. Accordingly, this Court should remand this case because as in <u>Diak</u>, the Agreement fails to meet the <u>Donovan</u> standards and is not covered by ERISA.

**CONTRACT CASES**

There are several instances where an employment contract has been held to be outside the

scope of ERISA. In <u>Jervis v. Elerding</u>, 504 F. Supp. 606, 608 (C.D. Cal. 1980), the court held that a contract between an employer and an employee providing for post-retirement or post termination in-kind compensation is not a "plan, fund or program" within the definitional framework of ERISA. The court in <u>Jervis</u> relied on two Opinion Letters issued by the Department of Labor[4] to conclude that the parties simply entered into an employment contract and did not create an employee benefit plan. The court in <u>Jervis</u> stated that the agreement in question: averred that it was the intention of the parties to formalize the pre-existing employer-employee relationship; recited that as additional consideration for services to be provided by the employee, the employer agreed to provide certain benefits; and, stated that in addition to the salary, the employer agreed to provide an apartment to the employee upon the employee's retirement or termination of employment. <u>Id</u>. at 609. The court in <u>Jervis</u> also relied on <u>Murphy v. Inexco Oil Co.</u>, 611 F.2d 570, 575 (5th Cir. 1980) and concluded that the parties merely memorialized their employee-employer relationship, and the clause in question was part of the present compensation arrangement, <u>rather than as part of a plan providing for retirement or deferral of income</u>. <u>Jervis</u>, 504 F. Supp. at 609 (emphasis added).

In <u>Murphy</u>,[5] supra, the court addressed the distinction between payments after retirement or termination pursuant to an employment contract, and a plan that specifically provides for an

---

[4] Op. Letter 76-79 (May 25, 1976) concluded that where an employee enters into an agreement with his employer to be paid pension benefits upon reaching 65 and is terminated prior to any portion of the plan vesting, the agreement is an employment contract and <u>not</u> an employee pension benefit plan as that term is defined in the Act.
Op. Letter 76-110 (September 28, 1976), concluded that an agreement between a corporation and an employee stockholder to provide him additional retirement compensation for past services in return for certain considerations is an individual contract and does not constitute an employee benefit plan under ERISA.

[5] <u>Murphy v. Inexco Oil Co.</u>, 611 F.2d 570, 575 (5th Cir. 1980) is binding precedent under <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

9

employee's retirement. The employment contract at issue in <u>Murphy</u> referred to a bonus plan which assigned a specific royalty interest in a drilling prospect to selected employees. <u>Murphy</u>, 611 F.2d at 572. The <u>Murphy</u> court found that the bonus program was designed to provide <u>current</u> rather than <u>retirement</u> income to the company's employees. <u>Murphy</u> interpreted the words 'provides retirement income' contained within 29 U.S.C. § 1002(2)(A)(i) as referring only to plans <u>designed for the purpose of paying retirement income</u> whether as a result of their express terms or surrounding circumstances. <u>Murphy</u>, 611 F.2d at 574-75. The Eleventh Circuit in <u>Williams</u> adopted the <u>Murphy</u> court's rationale that ERISA does not encompass payments that incidentally might be made after retirement but are not designed for retirement purposes. <u>Williams v. Wright</u>, 927 F.2d 1540, 1547 (11th Cir. 1991). In addition, the regulations exclude from the definition of a pension plan, "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c).

It is patently evident that based on both <u>Jervis</u> and <u>Murphy</u>, the Agreement in question was designed to provide <u>current</u> rather than <u>retirement</u> income to the Plaintiff. There are fourteen terms contained in the Agreement, which collectively constitute the Plaintiff's compensation for his services as an employee. Under <u>Murphy</u>, in order for the agreement to be covered by ERISA, it must be "<u>designed for the purpose of paying retirement income</u> whether as a result of their express terms or surrounding circumstances." <u>Murphy</u>, 611 F.2d at 574-75. The Agreement in this case is not covered by ERISA because the payments which Defendants allege fall under ERISA are exactly the type of payments that both <u>Murphy</u> and <u>Williams</u> would exclude since they are only incidental to the overall compensation package contained in the Agreement.

It is important to note that in <u>Williams</u>, the letter agreement specifically mentioned that the plan was set up for retirement purposes[6], and thereby "designed for the purpose of paying retirement income. . . as a result of [its] express terms." Conversely, the Agreement in the case contains no such language. Rather, the Agreement is truly an employment contract that is designed to provide current income and compensation. Any alleged benefits falling under ERISA which are to be provided are at most incidental to the Agreement, and were not designed for retirement purposes.

Based upon the case law interpreting the relevant provisions of 29 U.S.C. § 1002, the alleged Agreement and Oral Contract between the Plaintiff and Defendants do not constitute employee welfare benefit plans or employee pension benefit plans, and this court should remand the case to the Seventeenth Judicial Circuit in and for Broward County, Florida.

### B.   PLAINTIFF'S STATE LAW CLAIMS DO NOT RELATE TO A RELEVANT ERISA PLAN, AND ARE THEREFORE NOT PREEMPTED AND SHOULD BE REMANDED TO STATE COURT.

**FEDERAL JURISDICTION**

In determining whether a claim "arises under" the stated source of federal law under 28 U.S.C. § 1331, a right or immunity created by one of those sources must be an essential element of the Plaintiff's cause of action, and it must be apparent from the face of the "well pleaded complaint," unaided by the Answer or by the Notice of Removal, that there exists a federal question. <u>Thomas v. Burlington, Industries, Inc.</u>, 763 F. Supp 1570, 1575 (S.D. Fla. 1991). A case may not be removed to federal court based upon the defense of preemption, even if the defense is anticipated and both parties concede that the federal defense is the only question truly

---

[6] The letter states that the plan "will provide for an uninterrupted continuation of case as you gradually alter your work schedule to a retirement status...These benefits will continue until your death..."

at issue. Id. at 1575. Finally, if the sole basis of federal jurisdiction is a preemption defense, and the court finds preemption insufficient to confer federal jurisdiction, a case must be remanded to state court. Horton v. Cigna Individual Financial Services Co., 825 F.2d 852, 854 (N.D. Ill 1993).

**ERISA PREEMPTION**

Although the Supreme Court has broadly interpreted the "relate to" language of 29 U.S.C. Section 1144 (a) as encompassing any state law that has a "connection with or reference to" employee benefit plans, the broad interpretation does have limitations. The Supreme Court has not indicated that all state law actions are preempted under ERISA. Some state actions may effect employee benefit plans in "too tenuous, remote, or peripheral" a manner to warrant a finding that the law "relates to" the plan. Horton v. Cigna Individual Financial Services Co., 825 F.2d 852 (N.D. Ill 1993) (citing District of Columbia, 113 S. Ct. at 583 n. 1). Despite the apparent availability of complete preemption under ERISA, the complete preemption doctrine has been held to apply only if: the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls; and, a clear indication of Congressional intent to permit removal despite the plaintiff's exclusive reliance on state law. Geopel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 311 (3rd Cir. 1994). In addition, the fact that a state court might have to address some issues under ERISA does not make remand in appropriate since ERISA specifically provides concurrent jurisdiction to both state and federal courts for certain ERISA claims, indicating Congress' belief that ERISA issues

were not per se beyond the capability of state courts[7]. Horton, 825 F.2d at 859. Furthermore, an ERISA plan must exist (which has been contested herein) in order for preemption to act as a basis for removal. See generally, Thomas v. Burlington, Industries, Inc., 763 F. Supp 1570 (S.D. Fla. 1991).

## RELATION TO AN EMPLOYEE BENEFIT PLAN

According to the Eleventh Circuit's recent decisions, a state law cause of action "relates to" an employee benefit plan if the employer's conduct giving rise to such claim was not "wholly remote in content" from the benefit plan. Clark v. Coats & Clark, Inc., 865 F.2d 1237 (11th Cir. 1989). A claim does not, however, relate to a plan even though the employer's conduct occurred contemporaneously with an alleged ERISA violation, unless the facts relating to the employee's failure to receive benefits are relevant to the state law claim. Clark, 865 F.2d at 1245.

Two cases illustrate the distinction between when a state law claim relates to a plan and when a state law claim is wholly remote in content from a plan. See Howard v. Parisian, Inc., 807 F.2d 1560 (11th Cir. 1987); Clark v. Coats & Clark Inc., 865 F.2d 1237 (11th Cir. 1989). In Howard, relied on by the Defendants, an employee asserted a claim of intentional infliction of emotional distress against his employer. The employee alleged that his employer intended to cause emotional harm by refusing to pay benefits under an ERISA plan. The court held that ERISA preempted this claim because the employer's conduct in Howard was not wholly remote in content from the refusal to pay benefits. Howard, 807 F.2d at 1564.

Despite the decision in Howard, the Eleventh Circuit subsequently held that ERISA did

---

[7] 29 U.S.C. § 1132 (e) provides: ... State courts of competent jurisdiction of actions under paragraphs 1(B) and (7) of subsection (a) of this Section. Subsection (a)(1)(B) provides: (a) A civil action may be brought - (1) by a participant or beneficiary - (B) to recover benefits due under the terms of his plan, to enforce his rights under the terms of the plan, or to clarity his rights to future benefits under the terms of the plan.

13

not preempt an employee's claim of intentional infliction of emotional distress. <u>Clark v. Coats & Clark, Inc.</u>, 865 F.2d 1237 (11th Cir. 1989). In <u>Clark</u>, the employee's claim for emotional distress related only to his termination of employment, but not to the denial of benefits as in <u>Howard</u>. <u>Clark</u>, 865 F.2d at 1243 (Clark claimed that "his employment termination was carried out in a manner which was intended to inflict severe emotional distress upon him."). Thus, the <u>Clark</u> court found no preemption because "the only connection between Clark's tort claim and ERISA is that the conduct arose in a factual setting which overlapped that of Clark's ERISA claim." <u>Clark</u>, 865 F.2d at 1245.

The Plaintiff's claims more closely resemble the scenario in <u>Clark</u>. The Plaintiff's complaint alleges that the Defendants breached the Agreement with the Plaintiff when they failed to: provide access to an airplane; provide an equity position; provide the profit sharing and pension participation outlined in paragraph 4 of the Agreement; failed to comply with the bi-annual review; failed to pay the Plaintiff the fair market value for inventory provided; failed to comply with the automobile allowance; and, among other compensation to be provided, failed to pay deferred compensation monies. As in <u>Clark</u>, the conduct alleged throughout the complaint is not contemporaneous with the Defendants' refusal to pay alleged benefits. The only connection between the Plaintiff's claims and ERISA is that the conduct giving rise to the Plaintiff's various claims may have arose in a factual setting which overlaps an alleged ERISA claim. It can be truly said that the Plaintiff's state law claims have to do with breach of an employment agreement and are wholly remote in content from the refusal to comply with the terms of the Agreement which may be tenuously covered by ERISA, and are not "related to" an ERISA plan.

In addition, by providing in 29 U.S.C. § 1132 that state and federal courts have concurrent jurisdiction to decide ERISA claims regarding benefits due under a plan and to enforce rights

under a plan, Congress did not believe that state courts could not decide ERISA issues. Such a result would render that portion of the statue superfluous and meaningless.

## IV. CONCLUSION

Because the Employment Agreement and Oral Contract fail to meet the <u>Donovan</u> standards, the Agreement and Oral Contract are not plans governed by ERISA. Furthermore, the Plaintiff's breach of contract claims do not relate to an ERISA plan. As a result, the this case should be remanded to the Seventeenth Judicial Circuit in and for Broward, County, Florida.

Dated: September 25, 1996.

Respectfully Submitted,

ARTHUR B. D'ALMEIDA, P.A.
Attorneys for Plaintiff
105 East Palmetto Park Road
Boca Raton, Florida 33432
561/368-4674

By: *[signature]*
Arthur B. D'Almeida
Florida Bar No. 320668

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a copy of the foregoing Motion to Remand and Memorandum of Law, has been furnished by mail to Murray Hudson, Esq. & David J. Stefany, Esq., Hogg, Allen, Norton & Blue, P.A., 121 Majorca, Suite 300, Coral Gables, FL 33134, this 25th day of September, 1996.

ARTHUR B. D'ALMEIDA, P.A.
Attorneys for Plaintiff
105 East Palmetto Park Road
Boca Raton, Florida 33432
561/368-4674

By: *[signature]*
Arthur B. D'Almeida
Florida Bar No. 320668